UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JAMIE CARSON, SR.,

                Plaintiff,

         v.                                  CAUSE NO. 3:21-CV-807-APR

RONALD NEAL,

                Defendant.

**OPINION AND ORDER**

Jamie Carson, Sr., a prisoner without a lawyer, is proceeding in this case "against Warden Ron Neal in his personal capacity on a claim for monetary damages for allegedly denying him adequate hygiene items, bedding, and clean clothing, and for exposing him to excessively cold temperatures and constant lighting during a 12-day period in November 2019 in violation of the Eighth Amendment[.]" [DE at 5]. On October 20, 2023, Warden Neal filed a motion for summary judgment. [DE 70]. Carson filed a response on January 2, 2024. [DE 77]. On January 16, 2024, Warden Neal filed a reply. [DE 79]. Thus, the summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Federal Rule of Civil Procedure 56(a)**. A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. ***Heft v. Moore***, 351 F.3d 278, 282 (7th Cir. 2003).

However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." ***Goodman v. Nat'l Sec. Agency, Inc.***, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." ***Trade Fin. Partners, LLC v. AAR Corp.***, 573 F.3d 401, 407 (7th Cir. 2009). Summary judgment "is the put up or shut up moment in a lawsuit . . .." ***Springer v. Durflinger***, 518 F.3d 479, 484 (7th Cir. 2008).

To have a viable claim under the Eighth Amendment, Carson must satisfy two elements: (1) that he suffered an injury that is objectively serious enough to have deprived him of the minimal civilized measure of life's necessities, and (2) the prison official must have acted with deliberate indifference to the inmate's health or safety. ***Farmer v. Brennan***, 511 U.S. 825, 834 (1994). To satisfy the second prong, Carson must show Warden Neal "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." ***Board v. Farnham***, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotation marks, brackets, and citations omitted). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" ***Stockton v. Milwaukee County***, 44 F.4th 605, 615 (7th Cir. 2022) (quoting ***Donald v. Wexford Health Sources, Inc.***, 982 F.3d 451, 458 (7th Cir. 2020)).

Warden Neal provides an affidavit, in which he attests to the following facts: As the warden of Indiana State Prison ("ISP"), it is Warden Neal's role to manage and oversee the daily operations of ISP. [DE 70-2 at 1]. To perform these functions, Warden Neal delegates tasks to

2

other prison staff as appropriate. *Id.* Warden Neal does not review inmates' grievances, requests for accommodations, or complaints, but rather delegates those tasks to other staff. *Id.* With respect to concerns related to cell conditions, Warden Neal relies on the Unit Team Manager, Sanitation Supervisor, Custody Supervisor, and other custody staff to investigate and address any complaints. *Id.*

Inmates in restricted housing are moved into a Special Management Cell ("SMC") if they are deemed to be a danger to themselves or others. [DE 70-2 at 2]. Unlike normal restricted housing cells that have an open cell front, SMC cell doors are solid with a glass window. *Id.* On November 7, 2019, Captain Tibbles filed an incident report stating that, while Carson was being transported out of his cell[1] by correctional officers, he broke free from the escorting officers, kicked open the door to a caseworker's office, and threatened to kill and "gun down" the caseworker. *Id.* at 3; [DE 70-4 at 1]. Captain Tibbles ordered that Carson be placed in SMC due to his behavior, and called Warden Neal to inform him of the event and seek his approval. *Id*. Warden Neal relied on the information provided to him by Captain Tibbles and approved his request to place Carson in SMC. [DE 70-2 at 3-4]. Carson was held in SMC from November 7, 2019, until November 18, 2019. *Id.* at 2.

Carson argues that Captain Tibbles did not make the decision to place him in SMC, but rather was ordered to do so by Warden Neal. [DE 77 at 2, 7, 9]. But Carson provides no evidence supporting this assertion aside from his own speculation. Regardless, it is undisputed Warden Neal approved the decision to send Carson to SMC, and any dispute over whether Captain Tibbles made the initial recommendation is not material.

---

[1] Warden Neal attests Carson was being escorted from his cell because he threw a tray at a caseworker, which Carson disputes. But this dispute is not material, as the reason Carson was being transported from his cell is not relevant to any issue presently before the court.

The daily housing log indicates the temperature in SMC between November 7 and November 18 ranged from 70 degrees to 77 degrees, and Warden Neal was never informed of any excessively cold temperatures during that time frame. [DE 70-2 at 4; DE 70-5]. Carson responds that "The cells on SMC unit in the wintertime are freezing cold where there is an open window in which the cold Lake Michigan air comes in causing inmates on SMC to suffer." [DE 77 at 3]. But Carson does not dispute the logbook lists temperatures between 70 and 77 degrees and provides no evidence Warden Neal was aware of any issue with an open window exposing inmates in SMC to cold air.

There is a single light inside each SMC cell, which is controlled by a switch on the outside of the cell. [DE 70-2 at 4]. Certain lights referred to as "count lights" stay on at all times in the housing units so staff can conduct routine security checks. *Id.* Warden Neal was not informed of any complaint regarding cell lighting during the timeframe of Carson's stay in SMC. *Id.* at 4-5. Carson responds video evidence will show the lights in the SMC are "very bright." [DE 77 at 3]. But he does not provide any video evidence, nor does he provide any evidence Warden Neal was aware of any issue with the lighting in SMC.

Inmates in restricted housing are to be offered showers three times per week, and the logbook indicates Carson refused showers a number of times while in SMC. *Id.* at 5; [DE 70-5 at 11, 23]. Warden Neal was never informed of any issue with inmates being denied showers during this time, nor was he informed of any issue with Carson being denied showers or hygiene items. Carson responds he was never offered any showers during his time in SMC, and the correctional officers falsely recorded that he was offered showers and refused. [DE 77 at 3]. Nevertheless, Carson does not dispute the logbook indicates he refused showers, and he provides no evidence Warden Neal knew he was not being offered showers. [DE 70-2 at 5-6]. The

logbook also indicates Carson received medical care on several occasions while housed in SMC. *Id.* at 6. Warden Neal did not have any communications with Carson between November 7, 2019, and November 18, 2019, and was not aware of any of his alleged cell conditions or hygiene concerns. *Id.*

Warden Neal argues summary judgment is warranted in his favor because he was not deliberately indifferent to a serious risk of harm to Carson, as he was never aware of any issue with Carson's cell conditions or hygiene concerns. [DE 71 at 4-8]. In his response, Carson disputes the accuracy of the information provided by Warden Neal regarding the conditions in SMC and argues he was exposed to various inadequate living conditions including cold temperatures, bright lighting, and lack of sanitation. [DE 77].

Here, it is not enough for Carson to allege that he experienced inadequate living conditions in SMC. Rather, he must show Warden Neal was "deliberately indifferent" to those conditions, i.e. that Warden Neal knew he was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring. *See **Board***, 394 F.3d at 478. That said, Carson provides no evidence Warden Neal knew or should have known he was experiencing inadequate living conditions in SMC. Specifically, Carson provides no evidence he ever contacted or attempted to contact Warden Neal during his stay in SMC, and Warden Neal attests he never communicated with Carson and was not aware of his alleged cell conditions. Additionally, Warden Neal provides evidence the information recorded in the logbooks does not show any issues with the living conditions in SMC. While Carson disputes the accuracy of the information recorded in the logbooks, he provides no evidence Warden Neal had any reason to suspect that information was inaccurate. Carson argues Warden Neal's lack of knowledge about the living conditions in SMC does not excuse his liability, because it is the warden's duty to ensure

adequate living conditions. [DE at 5-6]. But Warden Neal can reasonably delegate responsibilities. *See* ***Burks v. Raemisch***, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job"); ***Chavez v. Illinois State Police***, 251 F.3d 612, 651 (7th Cir. 2001) ("Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable.").

Because there is no evidence Warden Neal was aware Carson experienced inadequate living conditions in SMC, no reasonable jury could conclude he exhibited a "total unconcern" for Carson's welfare in the face of serious risks. *See* ***Stockton***, 44 F.4th at 615.

For these reasons, the court:

(1) **GRANTS** Warden Neal's summary judgment motion [DE 70]; and

(2) **DIRECTS** the clerk to enter judgment in favor of Warden Neal and against Jamie Carson, Sr. and to close this case.

SO ORDERED on 18th day of April, 2024.

/s/ Andrew P. Rodovich
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT